Mr. Caruso, no rush. Whenever you are ready to go, we will be ready to hear from you. Thank you. May it please the Court, my name is Aaron Caruso. I represent the petitioner Maira Madrid-Montoya, whose asylum application was denied by the Executive Office for Immigration Review, resulting in a final order of removal against both her and her 11-year-old daughter. Your Honor, this case has had shifting issues. Initially, when the immigration judge issued the decision, it was a denial based on the finding that there was no past persecution. There was a suggestion that perhaps there had been an adverse finding as to government willingness and ability to assist. It was taken to the BIA. DHS did not file an opposition brief. The BIA affirmed as to past persecution, agreed that there was, without explanation, that there was no governmental willingness and added cognizability of a social group in nexus. I believe we are back to two issues at this point, just simply nexus and governmental willingness in light of the fact that the Court requested supplemental briefing on nexus. I will focus on that primarily. However, my only comment as to governmental willingness is that the agency never addressed it. The Court simply made a statement as to its understanding of the law in terms of the immigration judge's decision. The BIA simply said, we agree in sighted matter of AB. As I mentioned, the DHS asked you about that since you are going to focus on something else. The immigration judge suggested that Honduras was not being unwilling or unable to protect her. I understand your argument to be that we should not consider the IJ's suggestion, to be a decision on that prong of analysis. That is the sort of argument you are making? That is correct, Your Honor. That is in part because of Oriana Barr's directive that there is agency abuse if there is no reason to explanation. Okay. I get that. Decisionally, if we think that suggestion by the immigration judge has some degree of ambiguity to it, it is not a model of clarity. I will grant you that. If we think that suggestion is in some way ambiguous, wouldn't I need to defer to the BIA's interpretation of that suggestion? The BIA did not provide sufficient evidence to demonstrate that Honduras is unwilling and unable. Wouldn't I defer to the BIA as having interpreted the IJ's suggestion to be a decision that respondent failed to provide sufficient evidence? Your Honor, I concede that the agency made an If there are additional questions as to that issue, I am happy to address it. Moving on to the nexus element, are you still contending that the BIA's decision was insufficient in and of itself? I am suggesting that this Court cannot uphold that agency decision because there was absolutely no explanation for it. I would also submit to the BIA's explanation. Was there no explanation by the BIA, the IJ, or both? That is correct. That was a question. I apologize. Your Honor, the agency itself provided no factual explanation for its decision. That is one portion of the argument. Your Honor, I think that if the government in this particular case has attempted to construct an argument on behalf of the agency, I would say even if that goes back to the agency and it is fully adopted, that those arguments are insufficient on this argument. The second argument is that this is unreasoned and therefore it might be justifiable on remand, but we could not uphold it on the current record or the current decision. The third argument is that even if the board had adopted the government's rationale as it is currently given, that would fail on the merits. That is exactly correct. Thank you, Your Honor. With respect to Nexus, I do not have any arguments that are outside of what I contained in the supplemental briefing, but I just wanted to take this opportunity to try to summarize, to encapsulate what I was trying to convey. Clearly, the burden is on the applicant to show a causal connection. I believe that the most reasonable interpretation of the requirement that the applicants show that the persecution occurred on account of a protected ground is that a but-for test is to be applied by the adjudicators. This is nothing that is unfamiliar in the legal world. We have but-for tests in torts law, in civil rights law, in many areas. The easiest way for an adjudicator to determine if that burden has been met is to show that absent that protected ground, would there have been persecution? The neighbor to Ms. Montoya and her deceased boyfriend, partner, not related, is in the same boat as she is in terms of the land. Why is the familial connection there for her, but not for the next-door neighbor? Your Honor, as the Court is well aware, there is always going to be dissimilar results for people that seem to be similarly situated. Unfortunately, what we hear from immigration judges all the time, which is fully accurate, is I am very sorry about the horrible experiences you had. However, asylum law is not a panacea. We cannot use it to simply help people who need help. Unfortunately, in that situation that the Court just gave, the neighbor would not have a protected ground. We would not be able to say absent that experience. For example, I believe in my supplemental briefing I gave an example of where you have a neighbor who might allow cattle to graze in the area that they want to use for the airstrip. So the narco-traffickers could view them as a potential rival for that land. Unfortunately, they don't have a particular social group that can be articulated. So what would happen if Ms. Montoya and the decedent had been married and they got divorced? Whatever the equivalent would be of equitable distribution there, she gets the land by virtue of the divorce, by virtue of being married to him. But he is gone. Does she still have a particular social group? She probably would on these facts just through her daughter, because the daughter would potentially... But in that hypothetical I gave you, she has the land by virtue of the divorce. No, she would not at that particular point. She would simply be a landowner. But she got it by virtue of the family connection. And your Honor, there is a limitation on the but-for test that is applied both in the context of asylum law and in other areas. And the phrases that are used in asylum law is it is not a but-for cause or not an on-account of situation if it is tangential or incidental. And so, for example, if my client had not been the domestic partner of Herman, but instead Herman had been a rich uncle, and he had died and left her money in the will, and then she used that money to put in a bid on the property, there would have been no logical domino effect. And it is obviously... Would it work if the rich uncle died without a will, and it turned out that the daughter in this instance, based on the inheritance law of Honduras, it goes to spouse and then children, and if no children, siblings, and if no siblings because his brother is now dead, it goes to the children of his siblings. However that system worked, would that scenario be the same that we have here? You would say in that scenario, because she is the closest living relative, you know, the cousin twice removed of the nephew's brother's uncle, that because the inheritance law finds that relationship that he may not have even known about to be relevant, that now it is on account of that family relationship? That would be very fact-specific because... I know, but I am asking about that fact-specific example. Your Honor, I apologize. The burden would be on the petitioner to show that the persecutors were aware of that, and that is why they... No, but the point would be, as I understand your argument here, is that the persecutors here, to the extent they are persecuting the daughter, they are persecuting her not because she is the daughter, but because she owns the land. And your connection to the family is that, well, that's true. I don't think you really dispute that point. But what you say is, yeah, but the reason she's got the land is that because Honduran, you know, inheritance law works in such a manner that he apparently didn't have a will, and if you don't have a will, it goes to your wife, but he didn't have a wife, so then it goes to your issue. Right? But whether that's one step or the hypothetical I gave you, which was seven, it doesn't seem like that makes any difference to your argument. So I thought you would have said, yeah, the great niece, twice removed from the brother's uncle's roommate, I guess maybe not the roommate part, but as long as it was family, that's but for cause. That's why they got the land, and the reason they are targeted is because they had the land. I now understand your scenario, and I apologize. That is correct. If it is directly in, if the reason that she is subject to harm is on account of the fact that she had that relationship, then yes, then she has a protected ground. Now, I think the facts would be a little bit different, or the decision might be. The challenge with that, right, is that imagine instead of dying without a will, he died with a will, and instead of giving it to his daughter, he gave it to his best friend. Right? Then I think you would concede they're targeting because he owns the land, and he got the land through the nature of, you know, Honduran inheritance law. That is, you follow the will, but the result is totally different. That is correct, Your Honor, and the problem, if she was merely a good friend who had been, left this because she had helped to take care of his sick grandmother, an heir is not a cognizable particular social group, and so her claim would fail based on that. So if she were the spouse and received the property by whatever their equivalent would be of intestate succession, then there would be no claim? I thought you had answered that differently before. There would, and I apologize if I got confused by the hypothetical, but if she became entitled to that land because of her relationship with Hermon, and even if that came through a family court decision, then yes, it meets the nexus element test, because it is on account of that relationship that she is now subject to harm. So under the facts of this case, if he decided to give her the land because she's his girlfriend and he doesn't want her to leave him, and he gave the land to her, same result? No, Your Honor, I think that's different. It's on account of the relationship. Wasn't going to give it to her if she wasn't living with him and staying with him. Absolutely, but this is where I say, but for tests in every area of law, at some point, we're going to say it's tangential or peripheral or incidental, and that would be a situation, in my view, where an adjudicator would be capable of saying that. Well, and here, I mean, we're talking about, you know, how the operation of Honduran, you know, inheritance law works, but that's one available inference from the two lines that we have of the alleged phone call, right? The phone call, we're told, was two sentences, and it was one phone call, and one assumption, one inference, perhaps, is that drug traffickers knew that the daughter was going to be the owner of the land, and so they wanted the mother to exert an influence over the daughter to get her away from claiming the land. Another potential inference is that Ms. Montoya, she previously lived on the land, right? Correct. And so that, you know, she was still in the area, and they wanted her gone because they thought she might want the land. There's not much to go on here, and I wonder if that means, because you could draw inferences in multiple different directions based on the very limited phone call that we have, we're just looking for substantial evidence. So how can we choose one of these multiple inferences that all seem to be supported by the record? How can we choose one and say that's the only one that the agency could adopt here? For two reasons. First, because whether it was due to the fact that her daughter that was the child of the decedent, or because of her relationship, or we don't have to discern what the narco traffickers' understanding was of Honduran law. One way or the other, it had to do with that nuclear family relationship. And the second reason is because what the agency specifically thought... That also could have been because of the land, right? They wanted everyone gone. They wanted the neighbors gone. They posted a notice. She used to live there. They wanted her gone. They wanted everyone who might have a claim to that land gone, not everyone who was related to Mr. Urbina. But again, Your Honor, we're not... Or maybe they did, right? But if you can draw the inference either way, then the agency gets to draw that inference. We don't get to override that. Well, I think that there's going to be no dispute that the persecutors wanted the land. That that was their motivation. It wasn't because they wanted to harm her simply because they didn't like the family. But I think the second element... So I don't think that there's been any suggestion by the agency or by the government here that there was any reason other than a protected ground, other than her relationship to Herman and that daughter, that she received the death threat. And what I think is significant is in the decision, the BIA said they targeted her and his family, not because of their family relationship per se, but because they wanted the land. And that is legal error. And Your Honor, I'm out of time. Well, you've got some time left on rebuttal. So we'll now hear from Ms. Conrad. Thank you. May it please the Court. My name is Dawn Conrad, and I'm here today on behalf of the Attorney General. In this case, substantial evidence supports the agency's denial of Petitioner's application for asylum and withholding of removal for two reasons. Petitioner failed to demonstrate that the government of Honduras was unable or unwilling to protect her from the drug traffickers she fears, and Petitioner failed to show that her family-based particular social group was one central reason she was threatened in Honduras. Well, with respect to the first point, where do we find a rationale discussed for that, either in the IJ or the BIA opinions? Yes. Well, the agency decisions on this were admittedly brief. The IJ did say he reviewed the country conditions evidence in the record, as well as the letters of support that were submitted for Petitioner, and the BIA recognized that he reviewed the country conditions evidence in the record. And the agency is not required to write an exegesis that it reviewed every piece of country conditions evidence in the record. Is that sufficient? So, I mean, our case law, at least in the Fourth Circuit, do you believe in the Fourth to say, I have reviewed, and list what you've reviewed, and then to state the conclusion without connecting those two? Maybe that's right, but is that the argument that you're making? Yes, I would in this case, Your Honor, because here, unlike many examples where the court has found the government was unable or unwilling, we have no evidence that Petitioner ever contacted authorities or sought the help of authorities in any location that she lived in. So not in her original town, where she testified that Mr. Urbina had seen the drug traffickers, and perhaps police authorities working together, but also not when she moved two hours away to the Euro City, where she received the telephone threat, and not when she moved five hours away to San Pedro. So there's no evidence. Like in Orlano, this court also noted that if they fail to, or sorry, an applicant who relinquishes a protective process without good reason will generally be unable to prove the government's unwillingness or inability to protect her. Very good argument, and if the IJ put two sentences to that effect in the opinion, we wouldn't be asking these questions. Yes, I agree, Your Honor, that the agency's analysis was very brief, but in this case, I don't think they were required to do more because basically all we had was the country conditions evidence to show what conditions were like in Honduras, and the IJ did say that he reviewed it. Is that really all we can say? Because I confess the records sometimes run together, but I thought in this record that there was some suggestion that there was testimony or evidence that in the community she lived in, law enforcement worked with the drug traffickers, or were friendly with the drug traffickers, or something to that effect. She did. Well, she did, I believe, testify that Mr. Urbino, her late partner, saw the drug traffickers and maybe police or military authorities working together. Yes, she did testify to that. And so it's not, I mean, maybe you're right if literally the only evidence was the country report. I understand that, but that's something, right? And if the IJ had said, well, there's that, but she never availed herself of it, then maybe we're there. Given that testimony, in addition to the country report, is that not enough to require some connecting of the dots by the IJ? And if not, what's the best case you can point me to of a recent era? Because we seem to have evolved a little bit on that, the degree of explanation that's required in the circuit. What's a recent case that suggests to us that the conclusion alone, following an acknowledgement that they've reviewed the relevant information, that that's sufficient? I mean, the IJ did say that I think he considered her testimony, and then he also noted at one point that she had never, hadn't reported a threat to Honduran authorities. Now, that was in its analysis of her cat claim, but he does note her testimony there. And then as for a recent case, probably the closest thing, now, granted, this, I think this is probably a case where they found that the agency did not consider, did not, let's see, maybe discuss all the evidence in the record, but an Ibarra-Chavez, which is a 2022 case, the site is 31F4279, they noted the BIA and IJ are not required to discuss every piece of evidence in the record, but they must announce their decision in terms sufficient to enable a reviewing court to perceive that they have heard and thought and not merely reacted. And my argument here was we do have that in this case, because they did announce that they reviewed the country conditions and ultimately concluded that was insufficient to show Hondurans, Honduras was unable and unwilling to protect Petitioner. All right. And we would argue also that substantial evidence, this record does not compel a finding that the Honduran government was unable and or unwilling to protect Petitioner. So turning now to the nexus finding, the court reviews that for substantial evidence. And here the agency applied the correct legal standard when they concluded that Petitioner's familial relationship was not a central reason why she was threatened in Honduras. Instead, she was threatened because drug traffickers wanted her land. And after Mr. Urbina's death, they perceived her as a legal claimant for that land. Now, what we don't know from the record is it's not clear why they perceived her as a legal claimant to the land. Was it because her daughter may have inherited it? Is it because they thought Mr. Urbina gave it to her? Is it because they thought he willed it to her? We just don't have that information in this record. We have her belief that she believes her daughter is now the, has legal rights to the land, but we don't have evidence about why they threatened her aside from the fact that they thought she was a legal claimant to the land for some reason. And that reason goes back to the decedent, no matter which possibility there is. She's not in the same category as the neighbor across the street that took care of his dog while he was out of town, so he decided to give him the land as a reward. I mean, there's some connection because of a familial relationship. Tell us why it's insufficient. But it's insufficient here. They may perceive that she has some claim to the land because of the... Who is she in that sentence? I'm sorry, the she is confusing me because it seems to matter here whether we're talking about the mother or the daughter. They may perceive that the petitioner, the mother, is a legal claimant to the land based on some sort of family connection, but that would not be a central reason that she was but that all people that had a claim to the land were targeted. So this is more like the court's recent decision in Toledo-Vasquez, where everyone who intervened to help this woman leave an abusive relationship was targeted. There's no evidence, like in other cases where this court has found that the familial relationship was a central reason for the persecution. The familial relationship is trying to be leveraged in some way. So I thought you were going to say that the reason for the mother, the reason that that's not a familial relationship is because she wasn't a family member with the decedent. Right. She was a she was a girlfriend, not she would, to our knowledge, at least the record doesn't show that she was married, doesn't show a familial relationship. There's a familial relationship with the daughter, which is why she's trying to get it down to the daughter level instead of being at her level. But I thought the premise with the mother and why the mother doesn't work is that she's not a family member. I mean, we haven't raised that argument here. I think we just don't have the information to show based on this two line threat that she received, whether they even knew whether she was married to him or not. It is possible that the drug traffickers only knew they lived together on the land and we don't know what their knowledge was of the relationship. So in this case, is it correct that Ms. Montoya is the sole petitioner? She's the only one before the court at this moment, but her daughter was a rider on her asylum application below. So whatever the daughter's relationship is, it's derivative of Ms. Montoya. That's correct. Is the only petitioner. Correct. And here we also have more evidence that the drug traffickers target of the people who own the land was their central reason why they were trying to clear the area. Is everyone had to leave the land? A notice was sent out telling everyone to stay off the land. All legal all legal claimants to the land were treated the same, but not all family members of Mr. Urbina. We don't have evidence that his parents were threatened or targeted. And then also petitioner was only threatened 16 months after Mr. Urbina's death when she still remained in the same legal in the same geographic department as the disputed land, but the threat stopped when she left that department and moved to San Pedro. She ever threatened before the decedent was killed? No, we don't have any evidence of that. If and this is, I think, a factual determination here. And so the agency chose the correct interpretation of the facts, or at least substantial evidence supports the agency's interpretation of the facts. If the court has no further questions. Thank you very much. Thank you very much. Mr. Crusoe, you've got some rebuttal time. Thank you very much, Your Honor. Initially, with the governmental willingness, I don't want to spend much time on this, but it wasn't just the country. Thank you. It wasn't just the country condition reports. It was a respondent's credible testimony that the narco traffickers were working with the report. There has to be some showing that the making of the report would have reduced her threshold of risk below the well-founded fear level of 10%. You said some showing. I mean, it seems like the burden is on you, not them. Your Honor, there has to be a finding. I take that back. There has to be a finding that it would reduce it below 10%. Can you address this question, which is maybe a factual question? What's the best evidence from which I could conclude, whether I'm required to or not, that I could conclude that the narco traffickers were focused on the daughter in this case instead of or in place of the mother? What's the evidence from which I could conclude that the daughter was the target as opposed to the mother was the target? In the transcript, when the petitioner described the telephone call, she was told that she would be the victim the same way as the father of your daughter was. So there was clearly a connection. That's a description of the two of them, right? That's using the description of the father, the decedent, and of the mother, but that's not directing it to the daughter in any way. Your Honor, that's the only evidence I have. All right, great. Thank you. And just to respond to the government's arguments concerning Nexus, once again, what we've seen throughout these proceedings is, when asked why was petitioner targeted, the government's response is they want land. And that is the wrong answer. That is the wrong analysis. In Funes Muguia, obviously, the persecutor wanted an apartment. In Hernandez Cartagena, the persecutor wanted money. In Alameda Medrano, they wanted a charge dropped. That is the wrong analysis. And this is why the finding here by the agency is legal error. But the government responds in those cases and others that the difference is the approach to the alien was to use the alien to get the family to do something different. And we don't have that here. And Your Honor, what I would say, because I did see in the government's brief that at one point they said, well, there was not a situation where they were leveraging, using a family relationship to leverage some other result. Your Honor, the concept of leverage has no place in the statute itself. It says on account of. It is directing a but-for test. And so, yes, sometimes family members are targeted because they want to exploit that relationship to achieve some other result. Other times, the harm is simply being suffered because of that familial relationship. And I understand that the neighbors, it may be unfair that the exact same threat could be communicated to them, but they don't have a particular social group. Same thing can be said of Hermann. He received a threat from these narco-traffickers. Five days later, he is ambushed and assassinated. Yet he would have had no asylum claim. But this, the legal test that has been painstakingly through a number of decisions through this court that have been addressed to the agency, which the agency still refuses to adopt, is that the proper question is, why was this particular person targeted? In this case, there is no alternative explanation as to why she was targeted, except for that nuclear family relationship that she had. And if there are no other questions. MR. MCDOWELL. All right. Thank you very much. We appreciate the arguments of both counsel. Because of the current COVID restrictions, we cannot do what we normally would do and come down and greet counsel. So we hope you will come back sometime in the future when we can do that. So with that, the court is going to take a very short recess. And that will allow our next case to set up.
judges: G. Steven Agee, Julius N. Richardson, Allison J. Rushing